Ruben FOSTER, et al., Plaintiffs,

v.

FULTON COUNTY, Georgia, et al., Defendants.

No. 1:99–CV–900–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 12, 2002.

Jerry Davis, Glennville, GA, movant pro se.

Thomas McKee West, Office of Thomas M. West, Atlanta, GA, Brenda Loyce Gardner, Brenda Gardner & Associates, Atlanta, GA, for Mahboob Pashas, movant.

Stephen Brooks Bright, Robert Earl Toone, Jr., Katharine Aiken Huffman, Tamara H. Serwer, Alexander Taylor Rundlet, Atlanta, GA, Milton "Chip" Dale Row-

an, Chip Rowan & Associates, Atlanta, GA, for Ruben Foster, George West, Anthony Williams, Tony Martin, Lucas James, Grady McGlothlin, plaintiffs.

Robert Earl Toone, Jr., Alexander Taylor Rundlet, Atlanta, GA, for Richard Malicoate, Willie Hightower.

Overtis Hicks Brantley, Charles George Hicks, Paula Morgan Nash, Steven E. Rosenberg, Rolesia Butler Dancy, Office of Fulton County Attorney, Atlanta, GA, for Fulton County, Fulton County Bd. of Commissioners, Mike Kenn, Karen Webster, Tom Lowe, Bob Fulton, Emma I. Darnell, Nancy Boxill, Jacquelyn Barrett, L.L. Briggs, George Herron, defendants.

William T. Mitchell, Cruser & Mitchell, Norcross, GA, for Correctional Health Care Solutions, Inc., Kevin Ramos, Harold Minerve, Eno Ikoku, defendants.

Paula Morgan Nash, Steven E. Rosenberg, Rolesia Butler Dancy, Office of Fulton County Attorney, Atlanta, GA, for Michael Hightower.

### ORDER

SHOOB, Senior District Judge.

This action brought by HIV-positive inmates at the Fulton County Jail complaining of conditions of confinement and inadequate medical care is currently before the Court for a determination of what further action may be needed to enforce the terms of the Final Settlement Agreement approved by the Court on January 24, 2000.

### BACKGROUND

On April 16, 2002, in response to reports from the Court-appointed Correctional Healthcare Monitor, Dr. Robert Greifinger, and submissions by the parties, the Court ordered defendants to take certain additional steps to achieve compliance with the Final Settlement Agreement.

The Court's Order sought to address systemic problems that lead to unnecessary incarceration and chronic jail overcrowding, which in turn adversely affect living conditions at the jail, increase the risk of exposure to dangerous diseases, and interfere with the provision of adequate medical care.[1] Among these problems is the fact that hundreds of pretrial detainees charged with minor offenses spend far longer periods of time in the Fulton County Jail than they would under any sentence they would ordinarily receive if they were promptly provided with a lawyer and a court date.[2] This is both

---

1. In every quarterly report since his first report in March 2000, Dr. Greifinger has observed that jail overcrowding strains the systems of ventilation, sanitation, and plumbing at the jail. As a result, there are frequent floods and sewage leaks, and inoperable toilets, showers, and sinks. Dr. Greifinger has also reported that crowding promotes transmission of communicable diseases, especially air-borne diseases such as tuberculosis, and impedes the effectiveness mental health medication. Crowding also interferes with delivery of medical care and makes sanitary food preparation very difficult because kitchen equipment is not designed to accommodate the large population. All of these problems present particular risks to members of the plaintiff class, whose compromised immune systems make them more vulnerable to disease and whose medical condition requires them to have regular, unimpeded access to medical care. Furthermore, according to Dr. Greifinger, the number of inmates in this vulnerable category is probably twice the number actually identified as HIV-positive, because only half of the total number are diagnosed and choose to report it.

2. For many offenses, the typical sentence would be probation, community service, or one or two days in jail. For example, as of May 26, 2002, there were 240 persons in the jail awaiting the disposition of misdemeanor charges. Of these, 40 were being held for criminal trespass and 7 for offenses against public transportation such as fare evasion. Others were being held on charges such as public drunkenness and public indecency. Of

constitutionally unacceptable and a major contributing factor to the jail overcrowding problem.

To address this problem, the Court ordered defendants to immediately implement a program to provide counsel within 72 hours of arrest to all persons accused of minor offenses who cannot make bail. In addition, the Court ordered defendants to implement an All–Purpose Hearing calendar in State Court modeled on the hearings currently conducted in Superior Court, with the hearings to be held within 72 hours of arrest. Defendants have moved to stay the implementation of these requirements on the grounds that they are impossible or impracticable to implement. Defendants contend that the large majority of persons accused of minor offenses are arrested by municipal authorities and transported to municipal detention facilities and are not transferred to the Fulton County Jail until more than 72 hours after arrest. Defendants also argue that it is impracticable to conduct All–Purpose hearings even within 72 hours of incarceration in the Fulton County Jail, because this would not allow enough time to complete necessary paperwork and investigations before the hearing.

The Court also ordered defendants to take the following additional steps to correct other problems that lead to unnecessary incarceration and jail overcrowding: (1) expand the authority of Pretrial Services to include supervision of persons arrested for misdemeanor offenses; (2) evaluate the factors currently used to exclude certain persons charged with felonies from pretrial release and eliminate any that are unreasonable; (3) ensure that all persons charged with misdemeanors are offered a

*reasonable* bond in accordance with Georgia law; (4) develop and implement meaningful mental health diversion and mental health discharge planning; (5) increase compensation paid to appointed counsel in misdemeanor cases from the current $50 to a reasonable amount, or expand the Fulton County Public Defender's office to handle cases in State Court;[3] (6) expand the authority of the Judicial Administrative Expeditors to facilitate release of inmates whose cases are in State Court as well as Superior Court; (7) impose reasonable restrictions on the length of time a person may remain in jail (a) without accusation or indictment, and (b) accused or indicted but untried; and (8) implement an integrated computer system that links all of the appropriate agencies in the Fulton County criminal justice system.

Finally, to address a number of other problem areas regarding access to medical care and general living conditions, which Dr. Greifinger reported were not in compliance with the Final Settlement Agreement, the Court ordered defendants to take the following actions: (1) increase security staffing at the jail to the level necessary to provide timely access to medical care for the current population of inmates; (2) establish an efficient and reliable appointment system that will assure inmates timely access to specialty care; (3) ensure that new HIV-positive inmates with credible medication histories receive their medication in a timely manner; (4) ensure that all inmates who are required to be given x-rays actually receive them; (5) expand the current discharge planning resources at the jail and evaluate obstacles to discharge planning and take steps to remove these obstacles; (6) evaluate the

---

the 240, 117 had been in the jail for more than 15 days, 80 for more than 3 weeks; 65 for over a month, 17 for over 2 months, 9 for over three months, 3 for more than 6 months, and 1 for more than months.

3. The Court subsequently amended its order to permit defendants to provide representation by a public defender office or other entity.

performance of the food vendor and the system for delivering food to inmates and ensure delivery of appropriate medical diets to all inmates for whom such diets have been prescribed; (7) address deficiencies in the quality management program; and (8) repair or replace existing plumbing and HVAC systems so that they are able to function under the current population load without constantly breaking down.

The Court ordered defendants to report within 30 days on the specific steps they had taken to comply with each of the requirements of the Court's Order and gave plaintiffs 10 days to reply. Then, on May 28–29, 2002, the Court conducted a hearing to consider the progress that defendants had made and to determine what further actions might be necessary. Following the hearing, the Court directed the parties to submit proposed findings of fact and conclusions of law within 15 days. Having fully considered the evidence presented at the hearing and the parties' submissions, the Court now makes the following findings of fact and conclusions of law regarding defendants' compliance with the provisions of the Court's April 16 Order, as well as additional factors that contribute to undue incarceration and overcrowding. On the basis of these findings and conclusions, the Court orders defendants to take further action to comply with the Court's

Order and the Final Settlement Agreement.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. *Compliance with Provisions Designed to Eliminate Undue Incarceration and Reduce Overcrowding* [4]

A. *Appoint Counsel Within 72 Hours of Arrest*

1. On April 15, 2002, Fulton County entered into a 90–day contract with the Fulton County Conflict Defender to provide counsel to indigent inmates accused of minor offenses. Fulton County is currently engaged in a bidding process to obtain a long-term contract.

2. Fulton County contends that under the current contract counsel is provided to the inmates in the Fulton County Jail within 72 hours of their arrival at the jail. In fact, however, this is true only in a small minority of cases.

3. Persons arrested by Fulton County authorities in unincorporated parts of the county or by campus or MARTA police are transported directly to the Fulton County Jail. These persons are assigned an attorney at their initial appearance in Magistrate Court, which occurs within 48 hours of their arrest. As to these persons,

---

4. Although jail population has decreased in recent months, the Court finds that the jail remains seriously overcrowded. Defendants point out that population figures have recently dropped to at or slightly below the jail's capacity of 2,250. The Court notes, however, that the original design capacity of the jail was only 1,332. (Affidavit of Jacquelyn H. Barrett, filed August 1, 2000, ¶ 3.) Before construction of the jail was completed, Fulton County decided to double bunk floors 1–5, thus adding 918 beds and increasing the capacity to 2,250. *Id.* There is no evidence, however, that in connection with this double bunking any other changes were made in the

design or construction of the facility to accommodate the additional inmates, such as increasing the capacity of the plumbing, heating, ventilation, and air conditioning systems or expanding the kitchen and intake areas. Thus, according to Dr. Greifinger, even at the current population levels, "the crowding is unabated," and "the plumbing and air handling systems are virtually collapsed." (April 26, 2002, Report at 6.) It is clear, therefore, that jail capacity is not simply a matter of counting beds, and that the Rice Street facility is overburdened even with population levels at or somewhat below "capacity."

therefore, defendants are in compliance with the Court's Order. This category, however, comprises less than 25% of the total number of persons arrested for minor offenses in Fulton County.

4. The large majority of persons arrested for minor offenses in Fulton County (more than 75%) are arrested by municipal authorities in one of the nine municipalities located within the county, including the city of Atlanta. These persons are initially detained in municipal jails and make their initial appearance in municipal courts. In the city of Atlanta, where approximately 75% of the cases in the State Court of Fulton County originate, these persons are initially represented in Atlanta Municipal Court by the City of Atlanta Public Defender's Office.[5] However, once the defendant is bound over to the State Court of Fulton County, there is no coordination between the City of Atlanta Public Defender and the Fulton County Conflict Defender to share information that may be critical to the continuity of representation for inmates in the jail.

5. Once these cases are bound over to State Court, the inmates are transferred to the Fulton County Jail, where they are interviewed by Pretrial Services, which then forwards a packet to the Conflict Defender's office. Inmates are technically assigned an attorney at the time this packet is received, but they do not actually meet their attorney, or even know they have one, until they arrive in the lockup area behind the courtroom immediately before their All–Purpose Hearing in State Court.

6. Fulton County is currently attempting to schedule inmates for All–Purpose Hearings 14 days after their arrival at the Fulton County Jail. Thus, for all practical purposes, the large majority of persons incarcerated in the Fulton County Jail for minor offenses are not provided an attorney for at least two weeks after they arrive at the jail, and in a significant number of cases this time period is actually much longer due to delays in conducting interviews by Pretrial Services, delays in placing persons on a calendar, and failures to transport inmates to court on their hearing date.

7. Fulton County contends that it has no legal authority or responsibility to provide counsel to persons arrested by municipal law enforcement agencies on state law misdemeanor charges before they are bound over to State Court and transferred to the Fulton County Jail. The Court rejects this argument.

■ 8. Georgia law does not grant municipal courts exclusive jurisdiction over state law misdemeanor charges originating in a municipality. Nor does Georgia law require that persons arrested by municipal law enforcement agencies on state law misdemeanor charges be taken to a municipal court and detained in a municipal jail before they are bound over to the Fulton County Jail.[6] Thus, there is no legal im-

---

**5.** It is unclear what representation, if any, is provided to indigent persons appearing in other municipal courts in Fulton County.

**6.** The arresting officer has the discretion to take the arrested person "before the most convenient and accessible judicial officer authorized to hear the case...." O.C.G.A. § 17–4–21; *Gill v. Decatur County,* 129 Ga.App. 697, 700, 201 S.E.2d 21 (1973); *see also* O.C.G.A. § 17–4–62 ("In every case of an arrest without a warrant, the person arresting shall, without delay, convey the offender be-

fore the most convenient judicial officer authorized to receive an affidavit and issue a warrant ..."). This could be either a state court or a magistrate court judge, as well as a municipal court judge. *See* O.C.G.A. §§ 15–7–4(a)(3)–(4); 15–10–2(1), (3), (9); 17–4–40(a); 17–6–1(b)(1); 17–6–1(f)(1); 17–7–20 (authorizing both state court and magistrate court judges to conduct courts of inquiry, issue arrest and search warrants, grant bail except for certain felony offenses, and establish a schedule of bails); and 36–32–3 (granting municipal court judges the same power

pediment preventing Fulton County from conferring with the various municipalities within the county and agreeing on a unified system for providing counsel within 72 hours of arrest to persons arrested within municipalities on state law misdemeanor charges.

9. Not only is there no legal impediment to Fulton County's establishing such a system, but the Georgia Indigent Defense Act, O.C.G.A. § 17–12–30 et seq., and Fulton County's contract with the Georgia Indigent Defense Council *require* Fulton County to provide such a system.

■ 10. Under the Georgia Indigent Defense Act, Fulton County must provide attorneys "for indigents in all felony cases and in those misdemeanor cases in which indigents are guaranteed the right to counsel in the superior, state, and magistrate courts...." O.C.G.A. § 17–12–38.1. This includes indigent persons charged with state law misdemeanors that can only be tried in State Court or Magistrate Court. *See Alabama v. Shelton,* 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

11. Under the contract between Fulton County and the Georgia Indigent Defense Council, in return for its receipt of state funding, Fulton County agreed to comply with the Georgia Supreme Court's Guidelines for the Operation of Local Indigent Defense Programs. These guidelines provide in part: "Counsel shall be appointed for every eligible person in custody within 72 hours of arrest or detention." Guideline 1.2.

■ 12. Thus, Fulton County is contractually obligated to establish a system

under which all persons charged with misdemeanors that can only be tried in State Court or Magistrate Court are provided counsel within 72 hours of their arrest or detention, even if they are initially arrested and detained by municipal authorities.

13. Since April 18, 2002, two lawyers from the Fulton County Conflict Defender's office have been assigned to represent persons charged with misdemeanors during the All–Purpose Hearing calendars, which are held in the State Court of Fulton County every morning and every afternoon, Monday through Thursday, and in the morning on Fridays.[7] Two additional lawyers from the Fulton County Conflict Defender's office are assigned to the Magistrate Court where persons arrested in unincorporated Fulton County have their first appearances and commitment hearings. One lawyer from the Fulton County Conflict Defender's office is assigned as a floater to provide back-up for all calendars. Because lawyers from the Fulton County Conflict Defender's office are currently assigned to courtrooms, rather than cases, a defendant may not have the same lawyer representing him or her from one day to the next.

14. Because of the backlog of inmates in the Fulton County Jail, lawyers from the Fulton County Conflict Defender's office have been meeting their clients for the first time in the State Court courtroom immediately before court begins and have been pleading many cases for sentences of time served. Consequently, lawyers from the Fulton County Conflict Defender's office have not had the opportunity to conduct preliminary investigations or otherwise prepare for the majority of cases.

and authority as magistrate court judges in criminal cases).

7. Previously, Fulton County provided representation to persons facing misdemeanor

charges in the State Court by appointing lawyers to twenty cases per Jail calendar and paying the appointed lawyers a flat fee of $50 per case for only the first four appointed cases.

15. Since taking over State and Magistrate Court in early April 2002, lawyers for the Fulton County Conflict Defender have handled approximately 500 cases. This is a caseload that is approximately four times greater than the caseloads permitted under the caseload limits recommended by the Georgia Supreme Court's Guidelines for the Operation of Local Indigent Defense Programs. *See* Guideline 6.1 (recommending that the caseload of a full-time attorney handling misdemeanor cases be limited to 300 misdemeanors per year).

16. The current level of staffing of the Fulton County Conflict Defender is insufficient to meet the needs of providing representation to persons arrested on misdemeanor charges. In order to represent the approximately 4,300 misdemeanor cases in the State and Magistrate Courts of Fulton County, and to stay within the caseload guidelines, the State and Magistrate Court unit of the Fulton County Conflict Defender will require at least 15 lawyers, and approximately five paralegals, social workers, or investigators, and support staff.[8]

B. *Hold All–Purpose Hearing Within 72 Hours of Arrest*

■ 17. Contrary to this Court's April 16 Order, Fulton County has not yet implemented a system which provides persons arrested on misdemeanor charges with an opportunity to address their charges or review their bond at an All–Purpose Hearing within 72 hours of arrest.

18. Fulton County is attempting to schedule all inmates held on misdemeanor charges for the All–Purpose Hearing calendar within 14 days of their arrival at the Fulton County Jail. All–Purpose Hearing calendars are held twice a day, Monday through Thursday, and once on Friday.[9]

19. While the current scheduling of All–Purpose Hearings does not yet comply with the Court's April 16 Order, it is an improvement over prior practice. Prior to the entry of the April 16 Order, inmates had to wait until they were accused by the Fulton County Solicitor's Office before they were placed on any State Court calendar. Consequently, no matter how long it took the Solicitor's Office to accuse an inmate of a misdemeanor charge—and it sometimes took months—the inmate would not be brought to court until the Solicitor's Office got around to filing the accusation.

20. Since the entry of the Court's April 16 Order, all inmates, including some of those who have not yet been accused by the Solicitor's Office, are now being placed on the All–Purpose Hearing calendar. It is often the case, however, that many inmates who have not yet been accused by the Solicitor's Office have their cases rescheduled because of the inability of the Solicitor to proceed due to the lack of paperwork necessary to file an accusation.

21. The testimony of Peter Krauthammer, Deputy Director of the Pretrial Services Agency in Washington, D.C., Professor Douglas Colbert of the University of Maryland, and Judge Henry Newkirk of the State Court of Fulton County established that providing All–Purpose Hearings within 72 hours of arrest is feasible.

22. Fulton County's current inability to implement a system of providing persons arrested on misdemeanor charges with lawyers and All–Purpose Hearings within 72 hours of arrest is attributable to a lack

---

8. This does not take into account the increased burdens created by the recent decision of the Supreme Court in *Alabama v. Shelton*, —— U.S. ——, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).

9. Prior to the April 16 Order, the State Court held a "Jail Calendar" every other day to take pleas at the Fulton County Jail. The Jail Calendar has been replaced by the All–Purpose Hearing calendar.

of coordination between the various criminal justice and law enforcement agencies of Fulton County and the municipalities within Fulton County.

23. Before accepting an inmate for booking into the Fulton County Jail, Sheriff Barrett requires that the transferring law enforcement agency provide a charging citation or a police report. This paperwork is transmitted from the Sheriff's staff to Pretrial Services. Pretrial Services then interviews the inmate about community ties and flight risk and attempts to verify information from the interview. However, Pretrial Services does not receive complete police paperwork in approximately 20% of the cases.

24. Neither Sheriff Barrett nor Pretrial Services is able to explain what happens, in 20% of cases, to the police charging documents (the citation or police report) between the time an inmate is booked into the jail and the time Pretrial Services transmits bind-over packets that are missing charging documents and police reports to the Clerk of State Court.

25. The inability of Pretrial Services to provide a complete bind-over packet to the Clerk of State Court in at least 20% of the cases creates significant problems. Often, the only paperwork the State Court Clerk's office receives is the commitment sheet, occasionally accompanied by a carbon copy of the notice slip of the All–Purpose Hearing date given by Pretrial Services to the defendant.

26. The inability to compile in a consistent and timely manner the necessary paperwork (containing the jail ticket or booking sheet, the police charging documents (a citation or arrest report), and the criminal history report from the Georgia Crime Information Center) for all inmates severely hinders the ability of Fulton County to provide an All–Purpose Hearing within 72 hours of arrest. The failure to provide complete paperwork prevents the proper booking into the jail; prevents Pretrial Services from conducting a thorough interview; prevents the Solicitor's Office from preparing an accusation; and deprives defense counsel of adequate and timely discovery.

C. *Expand the Authority of Pretrial Services to Include Supervision of Persons Arrested for Misdemeanor Offenses*

27. The intake unit of Pretrial Services is comprised of approximately 20 people who operate 24 hours a day at the Fulton County Jail, interviewing persons booked on felony and misdemeanor charges. On April 29, 2002, Pretrial Services began interviewing persons booked into the Fulton County Jail on misdemeanor charges and placing them on an All–Purpose Hearing calendar in the State Court of Fulton County. Prior to April 29, Pretrial Services was not interviewing or providing court dates to inmates charged with misdemeanors.

28. Because of insufficient staffing, Pretrial Services is not able to interview approximately one in four inmates upon their booking on misdemeanor charges. When Pretrial Services fails to interview an inmate at booking, it may take an additional 48 hours after booking or longer before the inmate can be interviewed and placed on an All–Purpose Hearing calendar, thus causing further delays in processing inmates with minor misdemeanor charges out of the jail.

29. Insufficient staffing also prevents Pretrial Services from providing pretrial supervision to misdemeanor defendants in lieu of detention.

30. Pretrial Services has not received any increased staffing to accommodate its increased intake responsibilities with respect to persons facing misdemeanor charges but is expected to receive addi-

tional staff following its upcoming mid-year budgetary review in July.

#### D. Evaluate Factors Currently Used to Exclude Certain Persons Charged with Felonies from Pretrial Release and Eliminate Any that Are Unreasonable

31. The evidence presented during the May 28–29 hearing did not address inmates who were detained on felony charges. With the exception of a few serious offenses, however, judges of the Fulton County Magistrate and State Courts, as well as judges of the municipal courts within Fulton County, have wide discretion to establish pretrial release criteria, policies, and bond amounts for the majority of misdemeanor and felony offenses for which people are held at the jail. *See* O.C.G.A. § 17–6–1(f)(1) (granting state, magistrate, and municipal courts authority to establish bails by written order).

32. The broad authority contained in O.C.G.A. § 17–6–1(f)(1) should facilitate the immediate coordination between judges of the State, Magistrate, and various municipal courts in Fulton County to uniformly reevaluate and eliminate any unreasonable factors currently used to exclude persons charged with either felonies or misdemeanors from pretrial release.

#### E. Ensure that All Persons Charged with Misdemeanors Are Offered a Reasonable Bond in Accordance with Georgia Law

33. A significant factor contributing to the overcrowding at the Fulton County Jail is the setting by municipal courts of excessive bonds for minor misdemeanor charges. In most cases, these bonds are set without the input of any municipal court pretrial services agency and have not been informed by the advocacy of counsel. In most instances, therefore, the bonds set in municipal courts for persons charged with minor misdemeanor offenses do not reflect the individual circumstances of the defendant, his or her ties to the community, or actual risk of flight.

34. After arrestees who cannot make bond are bound over from the municipal court to the State Court of Fulton County, there is no opportunity to review the bonds set by municipal courts until the inmate is placed on an All–Purpose Hearing calendar in the State Court, which can be weeks later. This problem is made worse by the failure of the State Courts to conduct any bond review after an inmate charged with a misdemeanor offense requests a jury trial. The practice has been to continue the inmate's case for three to six months, without affording the inmate any opportunity to bond out prior to trial.

35. The lack of informed bond review hearings at which defendants are represented by counsel is directly related to the overcrowding at the jail. A two-year project conducted by the University of Maryland School of Law showed that providing lawyers within 48 hours of arrest to persons charged with nonviolent misdemeanor offenses at bail proceedings in Baltimore contributed to the reduction of the Baltimore Central Jail population from 1200 inmates to approximately 600 inmates within a year.

36. The judges of the Magistrate and State Courts of Fulton County and the municipal courts within Fulton County are given wide discretion to establish pretrial release criteria, policy, and bond amounts for all misdemeanor offenses. *See* O.C.G.A. § 17–6–1(f)(1). This broad authority should facilitate the immediate coordination between the judges of the Magistrate, State, and various municipal courts within Fulton County to establish a uniform preference for pretrial release in all but the most serious of misdemeanor offenses.

F. *Develop and Implement Meaningful Mental Health Diversion and Discharge Planning*

37. Of all the inmates on the mental health caseload who were released from the Fulton County Jail in March 2002, only 3% left the jail with enough medication to last them for even a few days. Fulton County did not present any evidence demonstrating that they were taking steps to develop meaningful discharge planning for mentally ill prisoners. The Court finds that without adequate planning and medication upon their release from jail, mentally ill inmates are more likely to be rearrested and reincarcerated within a short period of time, usually on minor offenses such as criminal trespass or public intoxication. This contributes unnecessarily to jail overcrowding.

38. Although there have been some meetings and steps taken toward the development of a mental health court in Fulton County, defendants did not present any evidence that they have funded and implemented or will soon fund and implement (by a date certain) any mental health diversion program in Fulton County.

39. There are not adequate mental health resources in the community to accommodate the needs of mentally ill persons arrested in Fulton County. Additional resources are necessary to ensure appropriate diversion and discharge planning for the mentally ill

G. *Increase Compensation Paid to Appointed Counsel in Misdemeanor Cases or Expand Authority of Fulton County Public Defenders Office or Other Entity to Handle Cases in State Court*

40. Fulton County has entered into an interim contract with the Fulton County Conflict Defender to handle cases in State Court and is engaged in a bidding process to obtain a long-term contract.

H. *Expand Authority of Judicial Administrative Expeditors to Facilitate Release of Inmates Whose Cases Are in State Court As Well As Superior Court*

41. No evidence on this subject was presented at the May 28–29 hearing. However, in defendants' written response to the Court's Order, they state that the authority of the Judicial Administrative Expeditors has been expanded to State Court. The Expeditors have assisted State Court in developing a list of inmates to be placed on the backlog calendars and All–Purpose Hearing calendars and are also reviewing lists of inmates provided by plaintiffs' counsel to assess them for release and placement on calendars.

I. *Impose Reasonable Restrictions on Length of Time a Person May Remain in Jail Without Accusation or Indictment and Accused or Indicted But Untried*

42. No evidence was presented on this subject at the May 28–29 hearing. However, in their written response to the Court's Order, defendants state that they have implemented a plan to establish such restrictions. Prosecutors and defense attorneys are currently evaluating their cases in an effort to reach a consensus to present to the State Court and Superior Court judges. Recommendations will be made to the judges for their final determination and implementation, but defendants provide no time-frame for accomplishing this.

J. *Implement an Integrated Computer System that Links All of the Appropriate Agencies in the Fulton County Criminal Justice System*

43. Fulton County has for a number of years discussed the creation of a Comprehensive Justice Information System

("CJIS") database to link up criminal justice and law enforcement agencies, including the City of Atlanta, to share information such as police reports. The system was scheduled to be operational by March 2002. However, it is not yet fully operational and does not yet include the City of Atlanta.

### II. *Other Factors Contributing to Undue Incarceration and Overcrowding*

44. During the May 28–29 hearing, plaintiffs identified the following additional factors that cause delay in the resolution of misdemeanor cases in the State Court of Fulton County and thereby aggravate the overcrowding problem at the Fulton County Jail.

### A. *Failure to Coordinate Between Law Enforcement and Criminal Justice Entities Within Fulton County*

45. Fulton County acknowledges that a significant factor in the overcrowding problem in the Fulton County Jail is the lack of coordination between the State Court and the various municipal courts within Fulton County. Nevertheless, neither the judges of the Fulton County State Court nor the Deputy County Manager for Criminal Justice Systems, who is responsible for arranging such coordination, have scheduled a meeting with the judges of the various municipal courts or the chiefs of police of the various municipal police departments. Such a meeting would allow the various agencies to coordinate policies governing the submission of completed paperwork before an inmate is booked into the Fulton County Jail; the establishment of uniform pretrial release criteria, policy,

and reasonable bond amounts for persons arrested for misdemeanor offenses; the timely binding over of misdemeanor cases from municipal jails to the Fulton County Jail; and arrangements to guarantee the provision of lawyers within 72 hours of arrest. Nor have efforts been made by Fulton County to identify which particular municipalities have problems providing complete paperwork for inmates booked into the jail, are setting unreasonable bonds, and have excessive delays between arrest and bind-over to the Fulton County Jail.

### B. *Delays Caused by the Practice of Continuing Proceedings to Give Notice to Victims Beyond The Requirements of The Law*

46. Overcrowding in the Fulton County Jail is exacerbated by a practice in which some inmates are not able to have their cases heard because Fulton County routinely causes proceedings to be continued in order to provide notice to victims beyond the notice required by Georgia law.[10] Fulton County has failed to shorten the time it takes to effectuate statutorily required notice for persons detained on misdemeanor offenses.

### C. *Delays Caused by Failure to Provide Translators to Non–English–Speaking Defendants*

47. Overcrowding at the Fulton County Jail is aggravated by the failure of State Court personnel to arrange for certified translation services for non-English-speaking defendants. Spanish-speaking defendants have had their cases continued for a

---

**10.** Fulton County suggests that defendants were justifiably prevented from resolving their cases because of state law provisions requiring that notice be provided to victims in certain domestic violence cases. The delays, however, stem from the failure of the Solicitor to obtain accurate contact information.

*See* O.C.G.A. § 17–17–14 ("It is the right and responsibility of the victim who desires notification ... to keep the [investigating law enforcement agency and the prosecuting attorney] informed of the victim's current address and phone number").

week and longer because of the failure to secure a translator.

D. *Delays in Completing Mental Competency Evaluations for Defendants*

48. Overcrowding at the jail is exacerbated by the failure of court personnel to secure timely mental competency evaluations. On-site mental competency evaluations are performed by Grady Hospital Forensic Services. A Grady doctor visits the jail from time to time to interview inmates. The average length of time between the entry of an order requiring a mental competency evaluation to be performed by Grady Hospital and the time the evaluation is actually performed is six weeks. Often, it takes even longer for the psychological report to be distributed to the parties and even longer for the case to be placed back on a court calendar. During this time, detainees remain in jail. The excessive amount of time inmates spend awaiting the completion of psychological evaluations contributes to overcrowding at the jail. While Fulton County acknowledges the six-week delay between a request for a mental competency evaluation and the actual performance of the evaluation, it has not taken any action to shorten this time.

E. *Delays Caused By Returning Filed Accusations to Solicitor's Office for Corrections*

49. Overcrowding at the Fulton County Jail is exacerbated by the practice of the State Court Clerk's office sending significant numbers of filed accusations back to the Solicitor's Office for corrections because of typographical errors. When accusations are routinely sent back to the Solicitor's Office for corrections, inmates are forced to wait in the Fulton County Jail until the Solicitor's Office refiles a corrected accusation. In some instances, accusations are sent back multiple times from the Clerk's office for corrections, causing de-

lays in bringing the cases of many inmates to court. Because of this process, inmates needlessly spend extra days in jail while the Solicitor's Office re-drafts accusations containing errors that could just as easily be corrected or waived in court by defense counsel. Fulton County has failed to eliminate delays caused by this corrections process.

F. *Delays Caused By the Failure of the Sheriff to Produce Inmates for Court*

50. Overcrowding at the jail is exacerbated by the failure of the Sheriff to produce inmates who have been placed on a calendar. Fulton County has not done enough to reduce the number of inmates who are not produced for their court dates.

III. *Compliance with Provisions Designed to Ensure Plaintiffs' Access to Adequate Health Care and Constitutional Living Conditions*

A. *Increase Security Staffing*

51. There are not sufficient security staff at the Fulton County Jail to ensure that inmates have timely access to health care, including discharge planning services, which are currently being provided by case managers from AID Atlanta. The shortage of security staff causes unnecessary delays in the provision of medical treatment and prevents some inmates from having contact with a case manager prior to their release from jail. Overcrowding exacerbates the understaffing problem, as it increases the demands placed on correctional officers.

52. At the hearing, Sheriff Barrett testified that she had given the county manager two options to address the staffing problem: fund a staffing study to determine the appropriate staff level for the jail, or authorize 50 new detention officer positions. Following the hearing, Sheriff Bar-

rett submitted a revised request seeking authorization for 20 new detention officer positions, with 10 to be funded in July 2002 and 10 more in October 2002.

B. *Establish an Efficient and Reliable Appointment System, Provide Timely Medication to New HIV-Positive Inmates, Provide Timely Chest X–Rays When Required, and Deliver Appropriate Medical Diets When Prescribed*

53. Timely access to specialty care, continuity of medication at intake, timely chest x-rays when required, and provision of prescribed medical diets have been problems that have persisted throughout most of this litigation. Dr. Greifinger has noted significant improvements in these area in recent months, but it is too soon to determine whether these improvements can and will be sustained.

C. *Expand Current Discharge Planning Resources and Remove Obstacles to Discharge Planning*

54. Coordination between the medical vendor (CMA), jail staff, and AID Atlanta has been ineffective. As a result, at least one terminally ill AIDS patient has been left to languish in the jail for months before finally being placed in a hospice, where he died a few days later.

55. Many HIV-positive inmates leave the jail without ever having contact with a case manager, despite the fact that there are two full-time case managers from AID Atlanta working at the jail. The Sheriff's Department has not provided sufficient security staff to ensure that AID Atlanta case managers have access to HIV-positive inmates and has not educated the security staff about the case managers' identity and presence in the jail. Access to case managers for female HIV-positive inmates has been exceptionally poor.

56. The Sheriff has identified problems in coordination and communication with AID Atlanta and has taken some steps to address these problems. It is too early to tell whether these steps are sufficient.

57. Defendants have not implemented a plan to address the discharge planning needs of mentally ill inmates, including those who are HIV-positive, to ensure continuity of care upon release and to reduce the risk of reincarceration of these individuals.

58. Defendants did not produce any evidence that they have developed and implemented a plan to expand current discharge planning services at the jail.

D. *Address Deficiencies in Quality Management Program*

59. According to Dr. Greifinger, a quality management program, which makes it possible to objectively assess the performance of health care delivery over time, is the most important element of infrastructure in ensuring health care quality. The quality management plan at the Fulton County Jail has been in place for only a few months. Although Dr. Greifinger is pleased with the new program, it is too soon to evaluate whether the plan has been effectively and permanently implemented at the jail so as to allow defendants to identify, evaluate, and address problems in health care delivery.

E. *Repair or Replace Existing Plumbing and HVAC Systems*

60. The Court finds that the chronically overcrowded condition of the jail, with double-bunking on almost every floor and inmates sleeping in common areas and dayrooms throughout the jail, has placed an enormous strain on the plumbing, heating, ventilation, and air conditioning systems. As a result, there is frequent flooding, overflowing toilets with sewage

leaking onto the floor, inoperable showers, and inadequate temperature control. In order to repair broken systems, entire housing units are frequently shut down, limiting the actual housing capacity of the jail. Until recently, defendants did not perform preventive maintenance on these systems to avoid deterioration and malfunctioning.

61. To correct the preventive maintenance problems, the County has contracted with a new maintenance vendor to provide services at the jail. The new vendor began work on May 1, 2002, and its performance is being monitored by a project manager with the County's General Services Department. Although this is a positive step, the Court finds that it is too early to determine whether defendants' plan to perform adequate preventive and corrective maintenance on these systems will be effective.

### CONCLUSION

It is obvious that the criminal justice system in Fulton County is rife with errors, waste, and delay, all of which have a significant adverse impact on conditions at the Fulton County Jail. In turn, the poor conditions at the jail have a particularly adverse effect on members of the plaintiff class, who are more vulnerable than most to the dangers of overcrowding and lack of proper medical care. The Court concludes that further action is necessary to achieve compliance with the Final Settlement Agreement and to correct violations of plaintiffs' rights to minimally adequate conditions of confinement and receipt of adequate medical care. The Court finds that the following remedial actions are narrowly drawn, extend no further than necessary to correct violations of federal

rights, and are the least intrusive means to correct these violations.

Accordingly, based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED that:

(1) Defendants' motion to stay implementation of actions directed in the Court's April 16, 2002, Order [# 149–1] is DENIED.

(2) Defendants shall immediately confer with the appropriate municipal authorities and shall reach whatever agreements are necessary to establish a system that will provide for the appointment of counsel and the conducting of All–Purpose Hearings within 72 hours of arrest for all indigents arrested on state law misdemeanor charges. Such a system shall be in place by September 30, 2002.

(3) The provision of counsel shall mean the appointment of an individual attorney who will have primary responsibility for the defense of the person charged with a misdemeanor, who will make contact with that person prior to his or her first appearance in court, and who will provide for continuous representation from arrest until final disposition of the case. If representation is initially provided by a city public defender or city-appointed attorney and later transferred to the Fulton County Conflict Defender or other county-appointed attorney, the system shall provide for communication and coordination between the attorneys so as to provide for continuity of representation.[11]

(4) Defendants shall authorize and fund sufficient additional positions for lawyers, paralegals, social workers, investigators, and support staff in the Fulton County Conflict Defender's office (or such other provider of defender services as the Coun-

---

11. A system that provides for representation by a single attorney from beginning to end is much to be preferred, and the Court encour-

ages Fulton County to adopt such a system if at all feasible.

ty may appoint) to comply with the recommended caseload limits set out in Guideline 6.1 of the Georgia Supreme Court's Guidelines for the Operation of Local Indigent Defense Programs.

(5) Defendants shall authorize and fund sufficient additional positions in Pretrial Services to accommodate its increased intake responsibilities at the Fulton County Jail with respect to persons facing misdemeanor charges. As part of their report to the Court on compliance with this requirement, defendants shall provide the following information: (a) the percentage of people accused of misdemeanors in the previous month who were screened by Pretrial Services during booking at the Fulton County Jail, (b) an explanation of why others were missed, and (c) the progress of staff increases for the intake division of Pretrial Services.

(6) Defendants shall immediately implement a program to identify and expedite the release of persons who have been detained in the Fulton County Jail on misdemeanor charges for longer periods of time than they would likely serve if convicted. As part of this program, beginning the week of July 22, 2002, and continuing thereafter on a weekly basis, defendants shall provide to the Court, plaintiffs' counsel, the State Court Administrator, and the Chief Judge of the State Court a list of all persons confined in the Fulton County Jail who have open State Court charges and who have been detained since the time of their arrest for longer than (a) 72 hours, (b) one week, and (c) 15 days. The list shall include each inmate's name, booking number, date booked into the Fulton County Jail, all charges, the court in which the case will be adjudicated, the arresting agency, and any holds on each inmate.

(7) Defendants shall immediately conduct a study of persons arrested in municipalities on state law misdemeanor charges to determine the feasibility of bypassing the initial detention of such persons in municipal jails and their initial appearance in municipal courts in favor of immediately detaining these persons in the Fulton County Jail and addressing their cases in the State Court.

(8) Defendants shall immediately confer with the judges of the State, Magistrate, and various municipal courts in an effort to encourage and facilitate their (a) reevaluation and elimination of any unreasonable factors used to exclude persons charged with either felonies or misdemeanors from pretrial release; and (b) establishment of reasonable, uniform pretrial release criteria, policy, and bond amounts for all misdemeanor offenses, including a preference for pretrial release in all but the most serious of misdemeanors.

(9) Defendants shall proceed expeditiously with the development and implementation of a mental health court or other mental health jail diversion mechanism and shall set a date certain for the establishment of such a program by September 30, 2002.

(10) Defendants shall proceed expeditiously with their plan to develop reasonable restrictions on the length of time an inmate may remain in jail without accusation or indictment, or accused or indicted but untried. By September 30, 2002, defendants shall submit their proposal to the State and Superior Court judges for their final determination and implementation. As part of their report to the Court on compliance with this requirement, defendants shall submit a copy of their proposal.

(11) Defendants shall proceed expeditiously with full implementation of the Comprehensive Justice Information System (CJIS), which shall link all relevant criminal justice and law enforcement agencies in the County, including those located in the City of Atlanta. The CJIS shall be fully operational by September 30, 2002.

(12) Defendants shall meet with the judges of the various municipal courts and the chiefs of police of the various municipal police departments to coordinate policies regarding the submission of completed paperwork before an inmate is booked into the Fulton County Jail; the establishment of uniform pretrial release criteria and reasonable bond amounts for persons arrested for misdemeanor offenses; and the timely binding over of misdemeanor cases from municipal courts to State Court. Defendants shall identify those municipalities that regularly provide incomplete paperwork for inmates booked into the Fulton County Jail, set unreasonable bonds, and hold inmates an excessive length of time between arrest and bind-over. As part of their report to the Court on compliance with this requirement, defendants shall describe the outcome of their meetings with the officials of each of the municipalities in Fulton County, specifically including their findings concerning (a) the practice in each municipality with regard to setting bail, the actual bail schedule used, and any other method of pretrial release relied upon; (b) the number of people per month coming to the Fulton County Jail from each municipality; (c) the practice of appointment of counsel in each municipality, if any; and (d) the average length of stay at the municipal jail prior to bind-over to the Fulton County Jail.

(13) Defendants shall immediately take steps to eliminate unnecessary delays caused by (a) continuing proceedings to give notice to victims beyond that required by law, (b) failure to provide translators to non-English-speaking defendants, (c) failure to secure timely mental competency evaluations, (d) returning filed accusations to the Solicitor's office for correction of typographical errors, and (e) failure to produce inmates for scheduled court dates.

(14) Defendants shall authorize and fund sufficient additional security staff at the Fulton County Jail to comply with the Court's prior Order. As part of their report to the Court on compliance with this requirement, defendants shall specify the number of new positions authorized, explain the basis for their determination that this number is sufficient to comply with the Court's Order, and state whether the staffing study requested by Sheriff Barrett will be performed and, if so, when it will be completed.

(15) Defendants shall develop and implement a plan to expand current discharge planning services at the jail and to address problems with AID Atlanta failing to see inmates referred to them. Defendants shall also develop and implement a plan to expand current discharge planning for mentally ill inmates, including those who are HIV-positive.

(16) Defendants shall continue their efforts to establish a sound and effective quality management plan for the health care delivery system at the jail.

(17) Defendants shall vigorously pursue both corrective and preventive maintenance programs with the goal of eliminating chronic heating, air conditioning, ventilation, and plumbing problems.

(18) On October 1, 2002, in addition to their regular monthly Update on Jail Population Plan, defendants shall file a separate report to the Court on their compliance with this order. The report shall describe in detail all of the steps taken to comply with each of the above requirements. Plaintiffs shall have 10 days from the date of service of defendants' report to file a response pointing out any areas in which plaintiffs believe that defendants have failed to comply with the Court's order and requesting any further relief they believe is needed. Based on defendants' October 1 report and plaintiffs' response, the Court will determine if it is necessary to schedule further proceedings.

(19) Finally, the Court DIRECTS counsel for defendants to serve a copy of this order on each individual defendant, on each Fulton County State Court judge, on each Fulton County Magistrate Court judge, on each of the judges of the various municipal courts in Fulton County, on the Fulton County Solicitor and on each of the solicitors in the various municipalities in Fulton County, and on the head of each law enforcement agency located in Fulton County.